

ROBERT A. GORDON
U.S. BANKRUPTCY JUDGE

# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF MARYLAND
### at Baltimore

| | | |
|---|---|---|
| In re: | * | |
| George Pile and Rebecca Pile | * | Case No. 18-18999-RAG<br>Chapter 13 |
| | * | |
| Debtor | * | |
| | * | |

* * * * * * * * * * * * * *

**MEMORANDUM OPINION IN SUPPORT OF ORDER SUSTAINING ORDER TO SHOW CAUSE WHY OBJECTION TO DISCHARGE SHOULD NOT BE OVERRULED, OVERRULING OBJECTION TO DISCHARGE AND GRANTING MOTION TO DISMISS**

## I. Introduction

The question presented by this dispute is whether an objection filed in the main bankruptcy case on the last day for filing complaints that object to a debtor's discharge, or seek to except certain debts from a discharge, but which does not commence an adversary proceeding, can be accepted as an informal complaint, adequate under the governing rules, to initiate litigation of the objection's subject matter through a later commenced adversary proceeding. There is considerable case law on this question, with one case in this District, *In re McConkey*, No. 08-25164–JS, 2011 WL 1436431 (Bkrptcy. D. Md. 2011), carrying significant weight. The Court has concluded that, per *McConkey's* reasoning, the document filed in this matter cannot

1

properly be slotted into Federal Rule of Bankruptcy Procedure, Rule 7008(a)'s gatekeeper criteria to serve as a complaint that seeks to except a debt from discharge. This is so because while the paper uses the rubric of fraud against the Debtor/Defendant, it does not satisfy the requirements of the relevant rule, as it fails to give adequate, literate, notice of the precise claim for relief alleged, and seeks relief that is barred as a matter of law. Therefore, the Order to Show Cause Why Objection to Discharge Should Not be Overruled (Show Cause Order) shall be sustained, the objection to discharge overruled, and Adversary Proceeding No. 18-00489 dismissed.

## II.  Background

George and Reba Pile commenced this case (Main Case) on July 5, 2018. In accordance with Bankruptcy Rules 4004(a) and 4007(c), the deadline to file an objection to discharge, or to except certain debts from discharge, was fixed as October 15, 2018 (Objection Deadline) and notice of that deadline was likewise forwarded on July 5th by the Clerk to creditors listed on the Matrix. (Dkt. No. 9).

The Debtors filed their Statement of Financial Affairs (SOFA) and Schedules with their Voluntary Petition and in Part 2, at page 27 of 54[1] of their Schedule E/F, in answer to question 4.2.1, the Debtors listed an unsecured obligation in the amount of $8,863.00 owed to the Municipal Employees Credit Union of Baltimore, Inc. (MECU). The debt was denoted as an "Unpaid Personal Loan" (MECU loan), that was opened in April 2017 and was "Last Active" on March 23, 2018. *Id*. The Debtors indicated that the debt was incurred with "at least one of the Debtors and another", though the third-party was not identified on that page. *Id.* However, Ruby Robinson, the objector in this dispute, was listed on Schedule H, at page 33 of 54, as the

---

[1] The reference is to the Clerk's docketing information printed at the top of the page.

co-debtor of the MECU loan. She was also listed on the Creditor Matrix and there is no dispute that she received, in a timely fashion, the Clerk's notice of the bankruptcy filing described above.[2]

On the Objection Deadline, Ms. Robinson, through counsel, filed a document entitled "Creditor/Co-Borrower (Ruby Robinson) Objects to Reba A. Pile (Co-Debtors) [sic] Chapter 7 Voluntary Discharge" (Objection) (Dkt. No. 17). The verbatim language of the Objection is as follows:

(1.) Ruby Robinson, co-borrower has been suffering and battling stage four (4) cancer for over five (5) years.

(2.) Ruby Robinson, creditor/co-borrower with co-debtor Reba A. Pile, (hereinafter known as "DEBTOR") are both borrowers on a personal loan to creditor Municipal Employee Credit Union, (hereinafter known as "MECU") issued on or about April 2017 for the approximate amount of $8,863.00.

(3.) Ruby Robinson was asked by DEBTOR to co-sign on a personal loan because she did not individually qualify. Under duress and medicated from chemo therapy [sic], she assisted DEBTOR.

(4.) DEBTOR made a false and fraudulent representation to co-borrower that she would be personally responsible for the debt to MECU. However, she did not re-instate this debt to creditor MECU in her voluntary Chapter 7 bankruptcy petition.

(5.) DEBTOR has acted with false pretenses and actual fraud in her representation to co-borrower. This is material to DEBTOR being discharged, as co-borrower (inadvertently a creditor once DEBTOR filed bankruptcy) is now liable on DEBTOR's personal loan to MECU. Co-borrower is not in a financial position to be liable for this debt that she now has to pay.

(6.) DEBTOR stated to co-borrower she would re-instate this debt with creditor, however, to date, she has not done so.

---

[2] Ms. Robinson's first name was mis-spelled as "Roby."

3

        She states that her attorney has advised her against re-instating although she wants to. Counsel for co-borrower has reached out to DEBTOR's attorney to further discuss and he has not responded to any communication.

(7.)    Discharging DEBTOR as it pertains specifically to this loan, will impose an undue financial hardship on the co-borrower who is on a limited fixed income.

(8.)    Co-borrower/creditor had no knowledge of DEBTOR's excessive debts nor her numerous bankruptcy petitions (98-62773; 09-32370; 18-18999). After reviewing DEBTOR's bankruptcy petition, specifically schedule J (Expenses), co-borrower/creditor has identified areas where DEBTOR has claimed excessive expenses that could be reduced and do not seem reasonable, which are, but not limited to: (7) Food ($800.00 for two (2) people); (9) Clothing, Laundry, ,dry cleaning ($200.00); (12) Transportation $247.00 (Gas, Bus and train) and (6) Utilities $230.00 cell phones, telephone, internet, satellite and cable services). These expenses seem excessive and unreasonable when DEBTOR lives and works within Baltimore City and co-debtor is retired. Additionally, $800.00 monthly food expense for two (2) people is also excessive and unreasonable, when co-debtor is retired.

*See* Objection.

The Objection's prayer for relief states, "creditor/co-borrower respectfully requests that this honorable court not discharge co-debtor, Reba Pile, [sic] Chapter 7 voluntary Bankruptcy Petition [sic]." *Id.* The Objection did not cite any legal authority in support of the relief requested nor did the Debtors file a timely response to the Objection.[3]

However, the Court issued an Order to Show Cause Why the Objection to Discharge Should Not be Overruled on December 12, 2018 (OSC) (Dkt. No. 22). The OSC provided as follows:

        This case was commenced on July 5, 2018. The deadline for objecting to Debtors' discharge, or the dischargeability of a particular debt, was October 15, 2018. (See Dkt. No. 9). Ms.

---

[3] It appears that at best, the Objection sought to force Ms. Pile to continue to pay the MECU Loan or at least retain personal liability.

4

>Ruby Robinson filed a document entitled "Creditor/Co-Borrower (Ruby Robinson) Objects to Reba A. Pile (Co-Debtors) Chapter 7 Voluntary Discharge" (Objection) on October 15, 2018. (Dkt. No. 17). By her Objection, Ms. Robinson appears to be asserting that Ms. Pile's discharge should be denied. Ms. Pile did not file a response to the Objection. However, pursuant to Federal Rules of Bankruptcy Procedure 4004(a) and 7001(4), objections to discharge under 11 U.S.C. §727(a) must be brought by filing an adversary proceeding. Accordingly, it is, by the United States Bankruptcy Court for the District of Maryland
>
>ORDERED, the Movant Ms. Robinson shall, on or before December 21, 2018, show cause in writing why the Objection should not be overruled; and it is further
>
>ORDERED, that if a response is not timely filed, the Objection shall be overruled without further notice or hearing.

On December 21, 2018, over two months after the Objection Deadline's expiration, Ms. Robinson essentially re-filed the Objection twice in the Main Case and then again as the initial pleading of an adversary proceeding against the Debtors (Case No. 18-00489) (Adversary Proceeding).[4]

The objection re-filed in the Main Case was treated by the Court as a response to the OSC and a hearing was held on January 23, 2019, with both Ms. Robinson and the Debtors represented by counsel. The Objection's defects – primarily, its failure to initiate an adversary proceeding and its vagueness – were noted by the Court and the parties were given the opportunity to fully brief the question of whether the Objection, and the attendant Adversary Proceeding, should be permitted to stand. The Court cited two cases – *In re Marino,* 37 F. 3d 1354 (9th Cir. 1994) and *In re Dominguez,* 51 F. 3d 1502 (9th Cir. 1995) – for the parties to review and utilize in their memoranda.

---

[4] Each paper (Dkt. Nos. 24, 25, 26) utilized identical language to describe the scenario originally described in the Objection. Ms. Robinson did not, in the first instance, pay the filing fee for the Adversary Proceeding. After a Deficiency Notice was issued by the Clerk on December 26, 2018, the fee was paid on January 3, 2019.

5

On February 21, 2019, Ms. Robinson filed a Memorandum of Points and Authorities in Support of Movant/Creditors [sic] Objection to Discharge of Reba Pile (Support Memorandum) (Dkt. No. 45). On March 9, 2019, Ms. Pile filed Defendant's Omnibus Motion to Dismiss Plaintiffs [sic] Complaint to Determine Dischargeability and Response to the Memorandum of Point and Authorities Filed by Movant and Plaintiff, Ruby Robinson (Motion to Dismiss) (Dkt. No. 48).

Ms. Robinson made the following arguments in her Support Memorandum:

(a) That she is a creditor of Ms. Pile as a result of the MECU Loan transaction;

(b) That the Objection was timely filed; and

(c) That the Objection should be liberally interpreted as commencing an adversary proceeding.

In conclusion, Ms. Robinson requested that the MECU Loan be excepted, "from [Ms. Pile's] discharge under 523(a)(2)(A)." In response, Ms. Pile made the following arguments:

(a) That the Adversary Proceeding was not commenced until after the Objection Deadline and that defect is fatally deficient;

(b) That Ms. Robinson is not a creditor of Ms. Pile and therefore lacks standing to pursue the Objection;

(c) That the allegations of the Objection do not state a claim for relief under 11 U.S.C. § 523(a)(2).[5]

In conclusion, Ms. Pile asked that the Objection be stricken and the Adversary Proceeding dismissed. On March 19, 2019, the Court held oral argument on the Support Memorandum and the Motion to Dismiss, and then took the matter under advisement. It is now ripe for decision.

---

[5] Unless otherwise noted, all statutory citations are to the Bankruptcy Code (Code), found at Title 11 of the United States Code and all rule citations are to the Federal Rules of Bankruptcy Procedure (Rules).

**III.     Jurisdiction and Venue**

The Court has jurisdiction over this contested matter pursuant to 28 U.S.C. § 1334, 28 U.S.C. § 157(a), and Local Rule 402 of the United States District Court for the District of Maryland.  This matter is a "core proceeding" under 28 U.S.C. § 157(b)(2)(I) and (J) and therefore this Court finds that the entry of a final judgment will not offend the strictures of *Stern v. Marshall*, 564 U.S. 462 (2011).  Venue is proper under 28 U.S.C. §1409(a).

**IV.     Analysis**

    **A.     Legal Standards**

At this point, Ms. Robinson has eschewed any claim that there is a legitimate basis for objecting to Ms. Pile's discharge.  Hence, she is left with the assertion that the potential contingent claim against her that may arise from co-signing the MECU Loan, was incurred by Ms. Pile's fraud.  To prevail in a non-dischargeability action for fraud under §523(a)(2)(A), the plaintiff must satisfy five elements: (1) that the defendant made a representation, (2) that the defendant knew at the time the representation was made that it was false, (3) that the defendant made the representation with the intent and purpose of deceiving the plaintiff, (4) that the plaintiff justifiably relied upon the false representation, and (5) that the plaintiff suffered damages as a proximate result of the representation.  *Dubois v. Lindsley* (*In re Lindsley*), 388 B.R. 661, 668 (Bankr. D. Md.2008).

Such claims must be resolved pursuant to Part VII of the Bankruptcy Rules, which governs adversary proceedings, the bankruptcy equivalent of civil actions under the Federal Rules of Civil Procedure (FRCP). To that end, Part VII substantially incorporates the FRCP. Rule 7001(6) provides that a proceeding to, "determine the dischargeability of a debt …", is an adversary proceeding.  Rule 7003 incorporates FRCP 3 which states that, "A civil action is

7

commenced by filing a complaint with the court." This means that a contested dischargeability claim based upon an allegation of fraud can only be decided in an adversary proceeding, initiated by the filing of a complaint. Among other things, this ensures that the full panoply of due process tools and safeguards included within the FRCP will be applied with vibrancy to determine dischargeability.

Rule 4007 sets the time limit for the filing of such actions, and that deadline is 60 days after the date first set for the meeting of creditors under Section 341(a). The Court may extend the deadline but only for "cause" set forth in a motion filed before the deadline expires. Rule 4007(c). A creditor with adequate notice of the impending deadlines must either file a timely complaint or seek an extension of the deadline before it expires. *McConkey* at *3.[6]

Because no adversary proceeding was commenced in a timely fashion, and no extension of the 60-day deadline was sought, Ms. Robinson's only hope for victory is that the Objection be deemed an informal complaint. The Court concludes that the Objection falls short of the relevant Rule's requirements and therefore cannot be deemed an informal complaint sufficient to initiate an Adversary Proceeding.

### B. *In re McConkey* Requires That the Objection be Overruled and the Adversary Proceeding Dismissed.

In *McConkey*,[7] the creditor filed a motion to modify the automatic stay (motion to modify) on November 18, 2008, the day after the bankruptcy case was filed, and well before the 60-day deadline to object to the debtor's discharge.[8] The goal of the motion to modify was to

---

[6] The sixty-day deadline is in the nature of a statute of limitations, normally strictly enforced. *McConkey* at *5; *In re Tepfer,* 280 B.R. 628, 630 (D. C. N.D. Ill 2002)

[7] *McConkey* was not cited by either party but instead was uncovered after the conclusion of the final hearing.

[8] The deadline to object to discharge is set forth in Rule 4004(a) and it is essentially the same as the Rule 4007(c) deadline addressed in this dispute.

seek bankruptcy court permission for three state court lawsuits already pending against the debtor to go forward to final judgment. One of the lawsuits was a fraudulent conveyance action and a copy of that complaint was attached to the motion. Also attached was a judgment and order granting partial summary judgment in the two other cases. *McConkey*, at *1. However, the creditor never sought an extension of time to either file a complaint objecting to the debtor's discharge, or, to have a debt excepted from the debtor's discharge, and the 60-day deadline passed without the commencement of an adversary proceeding or an extension. The debtor was granted a discharge on February 10, 2010. *Id.*

On March 14, 2010, the creditor filed a motion to "construe" the original motion to modify as an, "informal motion to extend time for filing complaint to deny dischargeability of debt." *Id.* While the motion's title suggested that an extension of time was sought, the body of the motion made it clear that what was really prayed for was to have the motion to modify treated as a complaint objecting to discharge (on the basis of the state law fraudulent conveyance claims, detailed in the complaint exhibit) and that was how Judge Schneider addressed the request.

After disposing of contentions not raised in the case at bar, the Court turned to the question of whether the motion to modify could be treated as an informal complaint. The Court first observed that for a paper to be viewed that way, it had to at a minimum satisfy the requirements of Rule 7008, which incorporates Rule 8(a) of the FRCP. The Rule states that a complaint must contain, (1) a short and plain statement of the grounds for the court's jurisdiction, unless the court already has jurisdiction and the claim needs no new jurisdictional support; (2) a short and plain statement of the claim showing that the pleader is entitled to relief; and (3) a demand for the relief sought, which may include relief in the alternative or different types of

relief. Further, the paper must also include a reference to, "the name, number and chapter of the case under the Code to which the adversary relates" and a statement regarding whether the proceeding is core or non-core. *Id.*, at *8 (quoting Fed. R. Bankr. Proc. 7008(a)).[9]

The Court held that despite the allegations asserted, the motion to modify failed to comply with the requisite pleading requirements because it "neither demanded a non-dischargeable judgment nor did [it] cite Section 523(c) of the Bankruptcy Code or allege that the proceeding was core". *Id.* Unlike other decisions reviewed in *McConkey*, where papers not titled "complaint" were ultimately deemed informal complaints if filed on, or before, the deadline, the debtor in *McConkey* did not explicitly make a demand with respect to the debt, or the debtor's discharge, or request an extension of the deadline to take action with respect to either.

In the case at bar, the essence of the Objection's allegations are that (a) Ms. Robinson was induced by Ms. Pile to stand as a co-signer of the MECU Loan at a time when she was ill and less than fully competent, (b) Ms. Pile promised she would be personally responsible for the debt but refused to "reinstate" it in her bankruptcy, and (c) discharging Ms. Pile from the MECU Loan would cause an undue financial hardship on Ms. Robinson. *See* Objection. Thus, while the precise nature of the cognizable relief sought is somewhat illusive, the best this jurist can deduce is that Ms. Robinson sought an order from this Court *that would prevent Ms. Pile from discharging the MECU Loan,*[10] leaving Ms. Pile responsible to pay the same, post-bankruptcy.

---

[9] The purpose of notice pleading is to "give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." *Conley v. Gibson,* 355 U.S. 41, 47, 78 S.Ct. 99, 103, 2 L.Ed.2d 80 (1957).

[10] Again, the Objection averred that, "Discharging DEBTOR as it pertains specifically to this loan, will impose an undue financial hardship on the co-borrower who is on a limited fixed income" and therefore sought an order that the Court, "not discharge", Ms. Pile's "bankruptcy petition."

The Objection did not indicate whether the claim was core or non-core, nor did it include a jurisdictional statement. Perhaps those issues are minor by comparison. But per *McConkey*, the question of the nature of the specific claim asserted, and whether any cognizable relief is sought, goes to the heart of whether a legitimate, literate claim has been stated sufficient to satisfy the minimum requirements of Rule 7008 and thereby conclude that the Objection can stand as an informal complaint. In this instance, the Court cannot find that to be the case.

This conclusion is reached for two reasons: (1) Ms. Robinson has no standing to seek the exception of the MECU Loan from Ms. Pile's discharge, and (2) the allegations of the Objection cannot reasonably be interpreted as seeking the denial of Ms. Pile's discharge *in toto*. Without the clear presence of either, the Objection does not meet Rule 7008's requirement, of describing a "short and plain statement of the claim showing [an entitlement] to relief."

As for the first premise, Section 523(c)(2) provides in pertinent part that the debtor shall be discharged from debts based upon fraud, "unless, *on request of the creditor to whom such debt is owed . . .* the court determines such debt to be excepted from discharge." A statute could not be plainer or more explicit, and as Ms. Robinson is not MECU, she does not have standing to have the MECU Loan excepted from Ms. Pile's discharge. *See In re Skinner*, 532 B.R. 599, 604 (E.D. Pa. 2015), aff'd, 636 F. App'x 868 (3d Cir. 2016)(finding that only a party to whom a debt is owed has standing to challenge the dischargeability of a debt); See also *In re Jarmul,* 150 B.R. 134, 138‑39 (Bankr. W. D. Pa. 1993); *In re Cannon,* 741 F.2d 1139, 1141 (8th Cir. 1984). In short, it is hornbook law that a party cannot seek to have the debt owed to another excepted from a debtor's discharge. Yet, that is the best assessment, based upon the words used, of the relief sought by Ms. Robinson in the Objection.

11

As for the second point, the allegations of the Objection cannot be interpreted as making out a viable case for the denial of Ms. Pile's discharge and indeed, Ms. Robinson does not assert that she is seeking a denial of discharge at this juncture. But even if she was, there are no allegations in the Objection that can be viewed as stating a claim under Section 727(a). Inducing someone, even fraudulently, to agree to a pre-petition contingent liability is not conduct that can result in a denial of discharge, nor is a failure to reaffirm a debt once a bankruptcy is filed.

Ms. Robinson's dilemma is not helped by the failure to include a statutory reference, or that of other legal authority to ease the inquiry. Nevertheless, since the focus is upon Ms. Pile's discharge of the MECU Loan, either Section 523 or 727 must be relevant. But whatever the alleged underpinning, neither statutory scheme provides a basis for finding that a legitimate, cognizable claim was stated in the Objection. Viewed in that light, the Objection must be overruled.[11]

## V. Conclusion

In conclusion, the OSC is sustained, the Objection to discharge is overruled and the Motion to Dismiss is granted. A separate order consistent with this Opinion shall be entered.

**END OF OPINION**

---

[11] Ms. Robinson also relies upon Rule 7015(c) and claims that the version of the Objection used to commence the Adversary Proceeding on December 21, 2018 should be deemed to "relate back" to the original version of the Objection. It bears repeating that the two documents are virtually identical. The version filed on December 21st does not allege any new facts or theories, as contemplated by the Rule. It simply restates the same narrative in order to commence the late Adversary Proceeding. It cannot save the original Objection's deficiencies as a would-be informal complaint highlighted above, nor correct the failure to properly commence an adversary proceeding in a timely fashion, as required by Rule 4007(c). In this instance, the law is certain that either a complaint (be it, formal or informal), or a proper motion to extend the deadline, must be filed before the deadline's expiration in order to preserve the claim. *McConkey* at *3. That alone excludes the "relation back" theory under 7015(c)(1)(A)'s express language.